**In re COMMITMENT OF David DODSON.**

No. 09–09–00053–CV.

Court of Appeals of Texas, Beaumont.

Submitted March 17, 2010.

Decided April 22, 2010.

George W. Lang II, State Counsel for Offenders, Huntsville, for appellant.

Melinda Fletcher, Special Prosecution Unit, Amarillo, for appellee.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

### OPINION

HOLLIS HORTON, Justice.

A jury determined that David Dodson is a sexually violent predator under Texas law. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–.150 (Vernon 2003 & Supp. 2009) (SVP statute). The jury found that Dodson suffers from a behavioral abnormality that predisposes him to engage in a predatory act of sexual violence. In two issues, Dodson appeals the trial court's judgment and order of civil commitment. We reverse the judgment and remand the case for a new trial.

Background

In a civil commitment proceeding under Chapter 841, the fact-finder, after a trial, decides whether the person being tried is a sexually violent predator. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.061 (Vernon Supp. 2009), § 841.062 (Vernon 2003). Because the jury is usually given a broad-form issue to answer, its determination of the issue often resolves more than one disputed issue. For example, to answer the broad-form issue submitted in Dodson's case, the jury was asked to determine whether Dodson "suffers from a. behavioral abnormality that predisposes him to engage in a predatory act of sexual violence[.]" The term "behavioral abnormality"[1] has its own unique statutory definition that the trial court provided to the jury. Thus, to resolve the broad-form issue, the jury was required to resolve any dispute over whether Dodson's condition had affected him to the extent that he would, beyond a reasonable doubt, be predisposed "to engage in a predatory act of sexual violence[.]"

As is often the case, Dodson and the State both utilized experts at trial to address whether Dodson had a behavioral abnormality as defined by the Legislature. In the case before us, Dodson challenges the trial court's ruling that his expert witness, Dr. Anna Shursen, was not qualified to address whether he suffers from a "behavioral abnormality."

Expert Testimony in SVP Cases

Because "behavioral abnormality" includes by definition an assessment of an individual's risk of recidivism, as well as

---

1. " 'Behavioral abnormality' means a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually vio- lent offense, to the extent that the person becomes a menace to the health and safety of another person." TEX. HEALTH & SAFETY CODE ANN. § 841.002(2) (Vernon Supp. 2009).

determining whether the individual has a congenital or acquired condition that affects his ability to control his behavior, resolving whether an individual has a "behavioral abnormality" is a multifaceted inquiry. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.002(2) (Vernon Supp. 2009). The SVP provisions allow the State and the person that the State is seeking to commit to obtain pre-trial, "an immediate examination of the person by an expert." TEX. HEALTH & SAFETY CODE ANN. § 841.061(c) (Vernon Supp. 2009). During pre-trial proceedings in this case, Dodson availed himself of his right to have experts examine him by filing a pro se motion to appoint consulting experts.[2] On April 7, 2008, the trial court appointed Dr. Shursen and several others to serve as Dodson's consulting experts. On that same date, the trial court appointed an attorney employed by the State Counsel for Offenders to represent Dodson.

Subsequently, in July 2008, Dodson's court appointed attorney designated Dr. Shursen as a testifying expert.[3] Dodson's expert-designation states that "Dr. Shursen will testify at court as to whether Mr. Dodson has a behavioral abnormality that makes him likely to re-offend as a sexually violent predator." In December 2008, the case went to trial.

After the State completed its evidence, Dodson called Dr. Shursen as a witness. Dr. Shursen testified that she holds a bachelor's degree of science, a master's degree in counseling and psychotherapy, and a doctorate in family sciences. In addition, Dr. Shursen holds Texas licenses as a professional counselor and as a sex offender treatment provider. *See* TEX.

OCC.CODE ANN. § 503.302 (Vernon Supp. 2009) (qualifications for professional counselor's license); TEX. OCC.CODE ANN. § 110.001(7) (Vernon Supp. 2009) (defining "sex offender treatment provider"); 22 TEX. ADMIN. CODE § 810.3(a) (2009) (requiring sex offender treatment providers to be licensed by the Council on Sex Offender Treatment). Dr. Shursen also described that she had approximately twelve years of experience "working with juvenile and adult sex offenders." As a treatment provider, Dr. Shursen testified that she received three thousand hours of clinical training at a "psyche hospital facility" and that she had twelve years of experience providing behavioral therapy treatment to sex offenders. Dr. Shursen further explained that she had previously assessed approximately twelve to fifteen persons in cases that involved the civil commitment of sexually violent predators.

Dr. Shursen met with Dodson for approximately three hours. After briefly describing her impression of Dodson based on her interview, Dr. Shursen was asked: "Did you find Mr. Dodson to have a [behavioral] abnormality?" Dr. Shursen replied: "I did not, not at this time." Just after Dr. Shursen expressed her opinion about whether Dodson had a behavioral abnormality, Dr. Shursen noted that the term "behavioral abnormality" was a legal and not a medical term. Dr. Shursen also testified that in her opinion Dodson has stopped the behavior that previously caused him to offend.

The record further reflects that the State first objected to Dr. Shursen's qualifications after she had provided the jury with her conclusions, but before she had

---

**2.** Dodson's pro se motion is not contained in the clerk's record before us.

**3.** Dodson also designated a psychologist as an expert, but for reasons that are not apparent

from the record, Dodson later filed a notice withdrawing his prior designation of the psychologist as one of his expert witnesses.

expressed the reasons for reaching her conclusions. When asked about Dodson's medical history, the State's attorney objected that Shursen "has not . . . qualified as an expert yet," and at that time, the trial court allowed the State's attorney to question Dr. Shursen about her qualifications. When Dr. Shursen stated that she was not a psychiatrist or psychologist, the State's attorney re-urged the State's prior objection that Dr. Shursen was not qualified to testify, stating: "[W]e don't believe that she meets the qualifications of an expert."

In response to a question by Dodson's attorney, the trial court clarified that it understood the State's objection to concern whether Dr. Shursen was qualified to give any opinion testimony on the subject matter involved in the suit. At that point, and while still in the jury's presence, Dr. Shursen provided additional details about her experience assessing risks of sex offenders. Dr. Shursen described that she was trained to do actuarial testing, and she specifically mentioned the Mn–SOST,[4] the Hare PCL–R,[5] and the Static.[6] Dr. Shursen further testified that she had approximately twelve years of "experience working with sex offenders and doing the assessments."

After Dr. Shursen had provided additional information regarding her experience, Dodson tendered Dr. Shursen as an expert witness. The State again objected, and the State's attorney argued that Dr. Shursen's "risk assessments are for treatment purposes and not related to behav-

ioral abnormality." The trial court then ruled on the State's objection, stating that it did not hear any evidence to support her being able to make a qualified decision as to whether or not a respondent in one of these cases is likely to commit future acts of sexual violence and is, in fact, a sexually violent offender. Therefore, [the court] sustain[s] the objection." At the point the court announced its ruling, the jury had heard Dr. Shursen's testimony about her qualifications and knew that she had interviewed Dodson. The jury was aware that the State had objected to Dr. Shursen's qualifications on the grounds that she was not a psychiatrist or psychologist and that the trial court had decided that Dr. Shursen was not a qualified expert.

Immediately thereafter, the trial court excused the jury to allow Dodson to make his bill of exception. *See* TEX.R.APP. P. 33.2. Outside the jury's presence, Dr. Shursen explained that the term "behavioral abnormality" was not a mental health term, and that having a mental health diagnosis does not necessarily place a person "at risk to reoffend sexually." Dr. Shursen also described her training as a sex offender treatment provider. At the conclusion of the bill, the trial court, outside the jury's presence, stated that it was "confident [Dr. Shursen's] a very excellent treatment provider. And she probably has done actuarials. But [the court] rule[s] that she is not qualified to present an opinion on [Dodson] as being a person as defined or not being a person as defined

---

4. Dr. Jason Dunham, a forensic psychologist who testified for the State, explained that the Minnesota Sex Offender Screening Tool Revised, known as the Mn–SOST–R, is an actuarial measure that estimates the risk of reoffense over a six year period.

5. Dr. Dunham explained that the Hare Psychopathy Checklist–Revised, or Hare PCL–R,

is a psychological test that measures psychopathy.

6. Dr. Dunham testified that the Static–99 is the most popular actuarial test used to measure the rate of reconviction for periods of five, ten, and fifteen years, and we assume that this is the test to which Dr. Shursen's testimony refers.

under Chapter 841 as a sexually violent predator."

## Issue One

In Issue One, Dodson contends the trial court abused its discretion by refusing to permit Dr. Shursen, his expert witness, "to testify as to whether [Dodson] has a behavioral abnormality." Dodson argues that the State's objections to Dr. Shursen's qualifications were not timely. He also argues that Chapter 841 of the Health and Safety Code does not specify that the trial court is limited to appointing experts from particular fields to assess whether a person is a sexually violent offender, but instead contemplates that a multidisciplinary team will conduct a review of persons referred to as potential predators. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.022 (Vernon Supp. 2009). According to Dodson, had the Legislature intended only for psychiatrists or psychologists to make these assessments of whether a person has a behavioral abnormality that predisposes them to reoffend, "[i]t could have so provided." Dodson further notes that the Texas Rules of Evidence do not require that an expert possess any specific type of degree, and instead, points out that Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX.R. EVID. 702. Finally, Dodson argues that the trial court's ruling prevented him from presenting his side of the case to the jury, which he contends denied him his due process rights guaranteed by the Fourteenth Amendment. *See* U.S. CONST. amend. XIV.

In response, the State argues that Dodson failed to preserve any due process complaints because he failed to raise them at trial. With respect to Dodson's argument that it had failed to timely object to Dodson's expert, the State argues that Dodson never complained in the trial court that the State's objection had not been timely. On the merits of whether Dr. Shursen had the necessary qualifications to express opinions in this case, the State argues that "[n]othing in Dr. Shursen's testimony indicated that she is qualified to determine whether someone meets [the] definition [of being a person who suffers from a 'behavioral abnormality.']" The State also argues, in the alternative, and if the exclusion of Dr. Shursen's further testimony constitutes error, that the exclusion was harmless. The State argues that because Dr. Shursen had already expressed her opinion that Dodson did not have a behavioral abnormality, "[t]he mission was accomplished. [Dr. Shursen] was able to give the jury a pretty thorough description of [Dodson] and his history, as well as her opinion on the ultimate issue."

## Standard of Review

In the absence of an abuse of discretion, an appellate court will not disturb a trial court's ruling regarding whether a witness qualifies as an expert. *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996). "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles." *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex.1995). The Rules of Evidence place the burden to prove that the witness is an expert on the party seeking to offer the expert's testimony. *Broders*, 924 S.W.2d at 151; *see also* TEX.R. EVID. 702.

## Analysis

Rule 702 "requires that experts be qualified 'by knowledge, skill, experience,

training, or education,' and that their testimony 'assist the trier of fact.' " *Broders*, 924 S.W.2d at 153 (quoting TEX.R. EVID. 702). Before the court excluded Dr. Shursen's further testimony, Dr. Shursen had described her specialized training and experience in treating persons with sexual abnormalities and she had stated that she possessed special skills in administering actuarial tests relevant to assessing an individual's risk of reoffending in the future. The trial court acknowledged as much when the court stated that Dr. Shursen was an excellent treatment provider and that she had done actuarial testing.

Whether the person being tried is a "sexually violent predator" is dependent on his being a repeat sexually violent offender and having a behavioral abnormality that predisposes him to engage in a predatory act of sexual violence. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.003(a), 841.062 (Vernon 2003). Thus, to qualify for SVP status, a person must not only have an acquired or congenital condition, but he must also be predisposed to committing a sexually violent offense to the extent that he becomes a menace to the health and safety of another person. *Id.* § 841.002(2). The jury's task of determining whether a person is a "sexually violent predator" is not completely finished if it only determines that the person on trial has an acquired or congenital condition. We have previously held: "[T]he legislature intended there be competent medical or psychiatric testimony to support an involuntary commitment under the Act, and provided

for it therein." *Beasley v. Molett*, 95 S.W.3d 590, 599 (Tex.App.-Beaumont 2002, pet. denied). However, *Beasley* does not hold that in SVP commitments, the jury should only hear from psychiatrists and psychologists, or that the term "behavioral abnormality" can be addressed only by physicians and psychiatrists. Instead, in *Beasley*, we reasoned that article I, section 15–a of the Texas Constitution,[7] read together with the SVP statute, required the State to produce competent medical or psychiatric testimony to support an involuntary commitment under the Act. *Id.; see* TEX. CONST. art. I, § 15–a.

The determination of whether a person is predisposed to committing a future act of sexual violence, a sub-issue inherent in the broad-form issue the jury answered, can be guided by the opinions of persons who possess the requisite experience in providing treatment to persons with sexual abnormalities and who also have the required expertise to assess recidivism risks. *See* TEX.R. EVID. 702. Although the trial court submitted the case in a broad-form submission, one of the sub-issues the jury had to resolve in Dodson's case was whether Dodson is predisposed to engage in a predatory act of sexual violence.

While courts are authorized to use broad-form submissions to determine disputed issues, the broad-form issue in an SVP case is a multifaceted inquiry. *See* TEX.R. CIV. P. 277 (providing that "the court shall, whenever feasible, submit the cause upon broad-form questions").

---

**7.** "No person shall be committed as a person of unsound mind except on competent medical or psychiatric testimony. The Legislature may enact all laws necessary to provide for the trial, adjudication of insanity and commitment of persons of unsound mind and to provide for a method of appeal from judgments rendered in such cases. Such laws may provide for a waiver of trial by jury, in cases where the person under inquiry has not been charged with the commission of a criminal offense, by the concurrence of the person under inquiry, or his next of kin, and an attorney ad litem appointed by a judge of either the County or Probate Court of the county where the trial is being held, and shall provide for a method of service of notice of such trial upon the person under inquiry and of his right to demand a trial by jury." TEX. CONST. art. I, § 15–a.

Whether a person has a "behavioral abnormality," as that term is defined by statute, is not a question that is limited to determining whether the person has an underlying congenital or acquired condition. In other words, a medical opinion to demonstrate that a person suffers from a behavioral or congenital abnormality may be a precondition to commitment, as such evidence is required by the Texas Constitution, but requiring medical evidence as a part of the State's proof does not mean that medical evidence is the only admissible proof used to resolve whether a person has a "behavioral abnormality" that includes a risk assessment as a subordinate issue.

In general, the Texas Rules of Evidence apply to all civil and criminal trials. TEX.R. EVID. 101(b). An expert's opinion may assist the jury by virtue of the witness's "technical, or other specialized knowledge[.]" TEX.R. EVID. 702. In *Gammill v. Jack Williams Chevrolet, Inc.*, the Texas Supreme Court used the following "beekeeper" analogy to illustrate the distinction between scientific and non-scientific expert testimony, stating:

> [I]f one wanted to explain to a jury how a bumblebee is able to fly, an aeronautical engineer might be a helpful witness. Since flight principles have some universality, the expert could apply general principles to the case of the bumblebee. Conceivably, even if he had never seen a bumblebee, he still would be qualified to testify, as long as he was familiar with its component parts.
>
> On the other hand, if one wanted to prove that bumblebees always take off into the wind, a beekeeper with no scientific training at all would be an acceptable expert witness if a proper foundation were laid for his conclusions. The foundation would not relate to his formal training, but to his firsthand observa-

tions. In other words, the beekeeper does not know any more about flight principles than the jurors, but he has seen a lot more bumblebees than they have.

972 S.W.2d 713, 724–25 (Tex.1998) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1349–50 (6th Cir.1994)). If the ordinary person is asked to select, out of a given patient population of ill people, the patients to avoid because of concerns that those persons might commit future violent acts, we think the providers dealing with that patient-population might have valuable insight into which patients present a significant risk. In our opinion, the care-providers that have dealt with the patients and who have seen and had experience with them could provide assistance in predicting which of the specific patients represented the greatest threat.

The risk of recidivism, or whether an individual will probably reoffend, strikes us as a question that depends on both training and experience, and having insight into the recidivism risk is not a matter that is susceptible only to scientific proof. The Legislature expressly acknowledged that a risk assessment is part of determining whether a given individual is a sexual predator in the definition it provided to define the term "sexually violent predator." *See* TEX. HEALTH & SAFETY CODE ANN. § 841.003(a) (creating the standard of "likely to engage in a predatory act of sexual violence" as part of the definition of sexually violent predator). While Dr. Shursen was not Dodson's treatment provider, she had given him tests to assess his recidivism risk, and she had conducted a three hour interview of him to form an opinion about the threat he represented.

In a prior SVP case, we noted that the Court of Criminal Appeals referred to the field of predicting a person's future dangerousness as an area that involves a

"soft" science. *See In re Commitment of Gollihar,* 224 S.W.3d 843, 853–54 (Tex. App.-Beaumont 2007, no pet.) (citing *Russeau v. State,* 171 S.W.3d 871, 883 (Tex. Crim.App.2005)). As a result, we applied the *Russeau* and *Rodgers* analyses in rejecting Gollihar's challenge to the State's use of a board certified psychiatrist who had testified that Gollihar would likely reoffend. *Id.* at 853–854; *Rodgers v. State,* 205 S.W.3d 525, 528 (Tex.Crim.App. 2006); *Russeau,* 171 S.W.3d at 883. We continue to maintain the view that predicting the risk of an individual's future recidivism is a "soft" science based largely on training and experience.

With respect to Dr. Shursen's training and experience, the record shows that in addition to her degrees and licenses, she was trained and licensed as a sex offender treatment provider. A sex offender treatment provider is, by definition:

[A] person, licensed by the council and recognized based on training and experience to provide assessment and treatment to adult sex offenders or juveniles with sexual behavioral problems who have been convicted, adjudicated, awarded deferred adjudication, or referred by a state agency or a court, and licensed in this state to practice as a physician, psychiatrist, psychologist, psychological associate, provisionally licensed psychologist, licensed professional counselor, licensed professional counselor intern, licensed marriage and family therapist, licensed marriage and family associate, licensed clinical social worker, licensed master social worker under a clinical supervision plan approved by the Texas State Board of Social Worker Examiners, or advanced practice nurse recognized as a psychiatric clinical nurse specialist or psychiatric mental health nurse practitioner, who provides mental health

or medical services for rehabilitation of sex offenders.

Tex. Occ.Code. Ann. § 110.001(7). The administrative regulations that apply to licensed sex offender treatment providers contain several standards, including one requiring a minimum of one thousand documented hours of clinical experience in the assessment and treatment of sex offenders, a reference from a qualified person who has actual knowledge of applicant's clinical work, and a minimum of forty hours of documented education in the prior three year period specific to sex offender assessment and treatment. 22 Tex. Admin. Code § 810.3(d)(1) (2009). The Council on Sex Offender Treatment regulates sex offender treatment licensing and is a program specifically created by the Legislature to coordinate effective assessment and treatment strategies to reduce recidivism of sex offenders and to enhance public safety. *See* 22 Tex. Admin. Code § 810.1 (2009).

Additionally, the Legislature did not restrict the question of risk assessment to physicians and psychologists, but instead it provided for a multidisciplinary approach for determining whether a person is a sexually violent predator. *See* Tex. Health & Safety Code Ann. § 841.022. The SVP's multidisciplinary approach implicitly recognizes that persons who are not psychiatrists or psychologists are capable of providing assistance in assessing whether an individual should be identified as a candidate for being subjected to a civil commitment proceeding under the SVP statute.

We conclude that Dr. Shursen possessed the necessary qualifications to provide an opinion related to her assessment of the risk that Dodson would commit a future act of sexual violence, a component part of the broad-form issue the jury evaluated and answered.[8] Dr. Shursen's lack of cre-

8. We emphasize that the parties in SVP cases

can file objections before trial in an attempt

dentials as a psychiatrist or psychologist may impact the weight the fact-finder gives her opinions about whether Dodson is predisposed to commit sexually violent acts; the lack of a medical degree does not of itself make her opinions on the issue of Dodson's risk to recidivate inadmissible.

■ With respect to the treatment of sex offenders and to the assessment of their risk of reoffending, the record before us reflects that Dr. Shursen possessed the knowledge and skills not possessed by the population generally, and that she was qualified to assess the risk that Dodson would commit another sexually violent offense. Additionally, at the point the State objected, the jury had already heard Dr. Shursen's opinion. "A trial court abuses its discretion in excluding expert testimony if the testimony is relevant to the issues in the case and is based on a reliable foundation." *State of Tex. v. Cent. Expressway Sign Associates,* 302 S.W.3d 866, 870 (Tex. 2009). On this record, we conclude the trial court abused its discretion by refusing to allow Dr. Shursen to further explain the basis of her conclusion that Dodson was not predisposed to engage in a predatory act of sexual violence, a component of his qualifying as a "sexually violent predator" as defined by statute. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.003.

## Harm Analysis

■ Having found error, we must determine whether the trial court's error in excluding Dr. Shursen's explanation of her opinion was harmful. *See* TEX.R.APP. P. 44.1. The State argues that because the trial court's decision to exclude Dr. Shursen's further testimony occurred after she had already expressed her opinion concerning the risk that Dodson might reoffend, the trial court's error in excluding her additional testimony was harmless. Dodson argues that depriving him of his only expert denied him of his right to a fair trial.

With respect to the standard we use to review the erroneous exclusion of evidence, the State cites the standard of review that we use in civil cases, Rule 44.1 of the Texas Rules of Appellate Procedure. Dodson does not refer to any specific standard of review, but relies on civil cases in arguing that the trial court erroneously excluded Dr. Shursen's testimony, and he does not argue that the civil standard of review is inappropriate. Section 841.146(b) of the SVP statute provides, in pertinent part, that: "Except as otherwise provided by this subsection, a civil commitment proceeding is subject to the rules of procedure and appeal for civil cases." TEX. HEALTH & SAFETY CODE ANN. § 841.146(b) (Vernon Supp. 2009). We conclude that Rule 44.1(a) of the Texas Rules of Appellate Procedure applies to reviewing Dodson's claim that the trial court erred in excluding Dr. Shursen's further testimony. *See* TEX.R.APP. P. 44.1(a).[9]

---

to avoid a number of the problems that can arise when the objections to the experts are first lodged in the midst of the trial. In our opinion, the parties should ask trial courts to resolve issues over the qualifications of experts and the admissibility of their testimony in SVP cases as early as possible to allow the parties to fully develop the record, and the parties should ask the trial court to conduct hearings on their objections well before trial. *See Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 414 (Tex.1998) (Gonzalez, J.,

concurring) ("I do not think that allowing parties to raise *Robinson* objections for the first time post verdict, or even during trial, is fair to the litigants or judicially efficient."). Nevertheless, a complaint that an expert's opinion is unreliable may be preserved by lodging an objection either before trial or when the evidence is offered. *Id.* at 409–410.

9. "No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals con-

Although we apply the civil appellate standard for reversible error, we note that in a civil SVP commitment case the jury is required to "determine whether, beyond a reasonable doubt, the person is a sexually violent predator." TEX. HEALTH & SAFETY CODE ANN. § 841.062(a). As of the date of the trial, Dr. Shursen was Dodson's sole designated expert witness. The dispute over whether Dodson would, beyond a reasonable doubt, probably reoffend was a critical issue at the trial, and Dodson presented no other expert witness testimony to address the issue.

 "A person seeking to reverse a judgment based on evidentiary error need not prove that but for the error a different judgment would necessarily have been rendered, but only that the error probably resulted in an improper judgment." *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). Generally, to succeed on a claim that the trial court erred in admitting or excluding evidence, the complaining party is required "to show that the judgment turns on the particular evidence excluded or admitted." *Id.* at 753–54. We review the entire record to determine whether the case turns on the evidence that the trial court excluded. *Id.* at 754. "[I]f erroneously admitted or excluded evidence was crucial to a key issue, the error is likely harmful." *Cent. Expressway,* 302 S.W.3d at 870.

The record demonstrates that the trial court appointed Dr. Shursen as a consulting expert and that Dodson timely designated her as an expert trial witness. The record further reflects that Dr. Shursen had the qualifications and had performed testing and interviews that would have provided the jury insight on the risk that Dodson would reoffend in a sexually vio-

lent manner. Whether Dodson would or would not probably reoffend was one of the critical issues that the jury resolved. There were no other experts that supported Dodson's contention that he was not likely to reoffend; therefore, Dr. Shursen's testimony was not cumulative of other expert testimony in the case. *See id.* While Dodson, and his mother, expressed opinions regarding the risk that Dodson would reoffend, neither were experts, and each was likely viewed by the jury as having biases that clouded their individual judgments on the question.

We are also not persuaded by the State's argument that Dodson was not harmed by the trial court's ruling. While Dr. Shursen stated her conclusion that she did not believe that Dodson currently had a "behavioral abnormality" before the State lodged objections, Dr. Shursen was never allowed to explain that her conclusion had been based on her experience and testing in evaluating the risk that Dodson would reoffend.

As the Texas Supreme Court has noted, "It is well settled that the naked and unsupported opinion or conclusion of a witness does not constitute evidence of probative force and will not support a jury finding even when admitted without objection." *Dallas Ry. & Terminal Co. v. Gossett,* 156 Tex. 252, 294 S.W.2d 377, 380 (1956). It is the basis of the witness's opinion, and not the witness's bare opinion, that has evidentiary weight. *See Burrow v. Arce,* 997 S.W.2d 229, 235 (Tex. 1999). The fact that the trial court allowed Dr. Shursen to express her mere conclusion, but refused to allow her to explain the basis for the opinion, stripped her mere conclusion of its weight. In a

cludes that the error complained of: (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals." TEX R.APP. P. 44.1(a).

case in which the State's burden was to prove beyond a reasonable doubt that Dodson was predisposed to reoffend, we are unable to conclude that admitting Dr. Shursen's opinion without also allowing her to express her reasons for reaching her opinion made the trial court's error harmless.

In summary, Dr. Shursen's testimony related directly to one of the key issues in the case—whether Dodson was predisposed to reoffend. After reviewing the entire record, we find that Dr. Shursen's testimony on that issue was not cumulative of any of the other expert testimony. Based on her training, experience, and her interview and testing of Dodson, Dr. Shursen was qualified to provide a risk assessment about whether Dodson was predisposed to reoffend. The jury should have been allowed to hear Dr. Shursen's further explanation about that conclusion. Because the trial court erred by excluding relevant and material testimony on a critical issue, and because no other expert testified in Dodson's favor on the critical issues in his case, the law requires that we reverse and remand Dodson's case for a new trial. *See* Tex.R.App. P. 44.1(a)(1).

Because the trial court committed harmful error, we sustain Dodson's first issue. Because Dodson's other issue would not result in greater relief, it is not necessary that we address Issue Two. Tex.R.App. P. 47.1.

REVERSED AND REMANDED.