**In re COMMITMENT OF Michael Wayne BOHANNAN.**

No. 09–09–00165–CV.

Court of Appeals of Texas, Beaumont.

Submitted April 26, 2010.

Decided July 22, 2010.

George W. Lang II, State Counsel for Offenders, Huntsville, for appellant.

Melinda Fletcher, Special Prosecution Unit, Amarillo, for appellee.

Before GAULTNEY, KREGER, and HORTON, JJ.

## MEMORANDUM OPINION

HOLLIS HORTON, Justice.

A jury determined that Michael Wayne Bohannan is a sexually violent predator

under Texas law. *See* Tex. Health & Safety Code Ann. §§ 841.001–.150 (Vernon 2010) (SVP statute). The jury found that Bohannan suffers from a behavioral abnormality that predisposes him to engage in a predatory act of sexual violence. Bohannan presents seven issues in his appeal from the trial court's judgment and order of civil commitment. In issue three, Bohannan complains that the trial court erred in excluding his sole expert witness. Because we find the trial court erred by excluding the testimony of Bohannan's sole expert witness, we grant Bohannan's request for a new trial.

### Legal Sufficiency

Bohannan asserts in his seventh issue that the evidence is legally insufficient to support the jury's verdict.[1] The SVP statute defines "sexually violent predator" as a person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." Tex. Health & Safety Code Ann. § 841.003(a) (Vernon 2010). "Behavioral abnormality" is defined as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* at § 841.002(2) (Vernon 2010). As to the first requirement, Bohannan admitted at trial that he had previously been convicted of two sexual assault offenses. As to the second, the State's evidence included expert witnesses who testified that Bohannan suffers from a behavioral abnormality that

makes him likely to engage in a predatory act of sexual violence.

The SVP statute requires the State to prove beyond a reasonable doubt that a person is a sexually violent predator. *See* Tex. Health & Safety Code Ann. § 841.062(a) (Vernon 2010). Thus, when reviewing legal sufficiency issues, we apply the same legal sufficiency standard of review that we apply in criminal cases. *In re Commitment of Barbee*, 192 S.W.3d 835, 839 (Tex.App.-Beaumont 2006, no pet.). With respect to whether the evidence is legally sufficient to support an affirmative jury finding, we review all of the evidence in a light most favorable to the verdict. *Id.* Therefore, we review the evidence introduced to the jury during Bohannan's trial to decide if a rational jury could have found, beyond a reasonable doubt, that Bohannan has a behavioral abnormality that creates a serious difficulty in his ability to control his behavior. *See id.*

In arguing his legal sufficiency challenge, Bohannan asserts that the State's expert witnesses provided "[n]o bases" for their opinions, thus, rendering their opinions "incompetent, conclusory[,] and speculative." The Texas Supreme Court has explained that "conclusory opinions are legally insufficient evidence to support a judgment even if the party did not object to the admission of the testimony." *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex.2009) (citing *Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004)). If there is no reliable basis offered for the expert's opinion, the opinion has no weight as probative evidence. *Id.* at 816–

---

1. Because a successful challenge to the legal sufficiency of the evidence to support the trial court's judgment would dispose of the need for further jury proceedings, we address Bohannan's seventh issue first. *See Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727–30 (Tex.

2003) (addressing proximate cause issue without reaching venue issue); *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex.2000) (addressing whether there was legally sufficient evidence to support the judgment without considering whether venue was proper).

17. If the opinion has a supporting basis, but there is a reliability challenge that requires the court to evaluate the underlying methodology, technique, or foundational data, then an objection " 'must be timely made so that the trial court has the opportunity to conduct this analysis.' " *Id.* at 817 (quoting *Coastal Transp. Co.*, 136 S.W.3d at 233). In this case, there was no objection to the testimony of either witness on grounds of unreliability.

During their respective examinations, each of the State's experts explained the methodology he had used in formulating his opinions. Each expert examined records and an evaluation packet prepared by the sex offender treatment program. Each examined historical records pertaining to Bohannan's previous offenses and each reviewed Bohannan's records about his various mandatory supervisions. Each also reviewed records about additional offenses that Bohannan committed while on mandatory supervision. Dr. Price administered risk assessment instruments and actuarial tests, and Dr. Arambula reviewed those tests. Additionally, each of the State's expert witnesses interviewed Bohannan.

Dr. Price, a clinical and forensic psychologist who is board certified in forensic psychology and neuropsychology, performed two actuarial tests on Bohannan. One was the "Static 99," which is used to measure the risk of sexual recidivism; the other was the "Minnesota Sex Offender Screening Tool–Revised" (MnSOST–R), which also predicts the risk of future sexual offenses. Dr. Price scored Bohannan with a "5" on the Static 99, which Dr. Price explained places Bohannan with a "moderately high risk of reoffending." On the MnSOST–R, Dr. Price scored Bohannan at a "10", which Dr. Price explained places Bohannan at a high risk of recidivism. Dr. Price diagnosed Bohannan as having "par-

aphilia not otherwise specified[,]" "personality disorder not otherwise specified[,]" and "cannabis abuse by history in remission, at least partially due to incarceration." After noting certain details of the aggravated sexual assaults for which Bohannan had been imprisoned, Dr. Price also testified about offenses that Bohannan committed while he had been placed on various mandatory supervisions. Dr. Price explained how these additional offenses affected his opinion. Dr. Price concluded that Bohannan has a behavioral abnormality that predisposes him to engage in predatory acts of sexual violence.

Dr. Arambula, a psychiatrist who is board certified in general psychiatry and forensic psychiatry, diagnosed Bohannan as having personality disorder not otherwise specified with features of antisocial conduct and paraphilia not otherwise specified with features of pedophilia, sadism, and exhibitionism. Dr. Arambula identified several factors as enhancing the probability that Bohannan would reoffend, including (1) the number of victims, five; (2) the variety of his victims' ages; (3) the fact that all of Bohannan's victims were strangers; (4) the fact that Bohannan threatened to injure his victims with a knife when he committed the aggravated sexual assaults; (5) the fact that Bohannan committed additional sex-related offenses while on various mandatory supervisions; (6) the fact that additional sex-related offenses were committed after Bohannan received sex offender treatment; (7) the fact that Bohannan used drugs when he committed the aggravated sexual assaults; and (8) the fact that two of the sex-related offenses Bohannan committed while on mandatory supervisions had involved children. Dr. Arambula concluded that Bohannan has a behavioral abnormality that predisposes him to engage in a predatory act of sexual violence, and that Bohannan was at risk for reoffending.

The record contains evidence that Bohannan is a repeat sexually violent offender who suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Reviewing the evidence in the light most favorable to the jury's verdict, a rational jury could have found, beyond a reasonable doubt, that Bohannan has serious difficulty in controlling his behavior and that he meets the statutory definitions that are associated with sexually violent predators. We conclude that the evidence is legally sufficient to support the jury's verdict. Issue seven is overruled.

### Exclusion of Expert Testimony

In his third issue, Bohannan contends the trial court abused its discretion in excluding the testimony of his only expert, Dr. Anna Shursen. Bohannan argues that trial courts are not limited by Chapter 841 of the Health and Safety Code to appoint experts with medical degrees to assess whether a person meets the definitions contained within the SVP statute. He also argues that the SVP statute does not establish the qualifications required of expert witnesses in SVP cases.

According to Bohannan, had the Legislature intended to limit the persons qualified to assess whether a person has a behavioral abnormality predisposing him to reoffend to psychiatrists and psychologists, "[i]t could have so provided." Furthermore, Bohannan asserts that the Texas Rules of Evidence do not require that an expert possess any specific type of degree, and instead, he points out that Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. Finally, Bohannan contends that the trial court's ruling, because it prevented him from presenting his side of the case to the jury, denied him a fair trial.

The State contends that Dr. Shursen is not qualified to present expert testimony. The State argues that Dr. Shursen does not have the requisite forensic training and experience even though it acknowledges she "has extensive experience and training in providing sex offender treatment." Nevertheless, the State asserts that Dr. Shursen's expertise "does not 'fit' with the forensic task of determining whether a person suffers from a behavioral abnormality." Alternatively, the State maintains that regardless of error, the trial court's decision to exclude Dr. Shursen's testimony was harmless.

Prior to trial, the State filed a motion to exclude Dr. Shursen's testimony. The trial court conducted a *Daubert* hearing,[2] and during the hearing, Dr. Shursen testified regarding her qualifications as an expert. According to Dr. Shursen, she has a bachelor's degree of science, and her advanced mental health degrees include a master's degree in counseling and a doctorate in family sciences and family therapy. In addition, Dr. Shursen holds Texas licenses as a professional counselor and as a sex offender treatment provider. *See* TEX. OCC. CODE ANN. § 503.302 (Vernon Supp. 2009) (qualifications for professional counselor's license); TEX. OCC. CODE ANN. § 110.001(7) (Vernon Supp. 2009) (defining "sex offender treatment provider"); 22

---

**2.** *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.E.2d 469 (1993) (a trial court's preliminary assessment of whether the reasoning or methodology underlying an expert's testimony is scientifically valid and relevant to the facts in issue); *see also E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549 (Tex.1995).

Tex. Admin. Code § 810.3(a) (2010) (requiring sex offender treatment providers to be licensed by the Council on Sex Offender Treatment). In addition to the training required to obtain her license as a professional counselor, Dr. Shursen explained that she received an additional one thousand hours of clinical training in the areas of assessment and treatment of sex offenders, qualifying her for a license as a sex offender treatment provider. *See* Tex. Occ. Code Ann. § 503.302 (qualifications for professional counselor's license); 22 Tex. Admin. Code § 810.3(d)(1) (2010) (criteria to obtain a sex offender treatment provider license). Dr. Shursen described that she has provided behavioral therapy treatment to juvenile and adult sex offenders as a licensed sex offender treatment provider since approximately 2000. At the time of the *Daubert* hearing, Dr. Shursen had been providing treatment for 105 to 108 sex offenders a week.

With respect to statutory civil commitment proceedings under the SVP statute, Dr. Shursen explained that she had previously provided her services to assess approximately eighteen persons. Dr. Shursen also described that she had received training on administering actuarial tests, and she specifically mentioned her training to administer the MnSOST–R, the Hare PCL–R, and the Static 99.[3] Dr. Shursen testified that she continuously reviews research material and attends seminars concerning civil commitments and monitors changes that occur in the actuarial testing of this population. Dr. Shursen explained that she conducts risk assessments for her sex offender clients as well as in SVP cases. According to Dr. Shursen, "[t]here's very little difference" between the two assessments.

Focusing on the SVP statute, Dr. Shursen explained that the term "behavioral abnormality" is a legal term, not a mental health term. Additionally, Dr. Shursen stated that the assessment of risk is not limited to SVP cases, as she explained that she has testified in other types of cases about her risk assessment presented when a person is to be released into the community. Dr. Shursen described to the court the methodology she followed to assess whether a person has a behavioral abnormality.

At the hearing's conclusion, the trial court granted the State's motion to exclude Dr. Shursen's testimony. Following trial, the trial court then filed findings of fact and conclusions of law, and it concluded that "Dr. Anna Shursen is not qualified to offer an expert opinion as to whether [Bohannan] suffers from a behavioral abnormality that predisposes him to commit predatory acts of sexual violence."

At trial, outside the presence of the jury, Dr. Shursen offered her opinion regarding whether Bohannan has a behavioral abnormality. Along with her training and experience, Dr. Shursen's assessment in Bohannan's case was based on her meeting with him for approximately two and a half to three hours, actuarial assessments that she administered and that she discussed during the *Daubert* hearing, and her review of Bohannan's various records. Based on this information, Dr. Shursen testified that in her opinion, Bohannan did not have a behavioral abnormality "at this time."

### Standard of Review

Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling regarding whether a witness has qualified as an expert. *Broders v. Heise,*

---

**3.** During trial, Dr. Price described each of these tests and explained that he had administered these tests to Bohannan. Dr. Price also explained what the test results indicated.

924 S.W.2d 148, 151 (Tex.1996). "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles." *E.I. du Pont de Nemours & Co., Inc. v. Robinson,* 923 S.W.2d 549, 558 (Tex.1995) (citing *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985)). The Texas Rules of Evidence place the burden to prove that the witness is an expert on the party seeking to offer the expert's testimony. *Broders,* 924 S.W.2d at 151, *see also* Tex. R. Evid. 702.

*Analysis*

■ In a recent case, we examined Dr. Shursen's qualifications to provide an expert opinion about whether a person had a behavioral abnormality, a determination that is necessary to qualify the person as being a sexually violent predator as those terms are defined by the Legislature. *See In re Commitment of Dodson,* 311 S.W.3d 194 (Tex.App.-Beaumont 2010, no pet. hist.). In *Dodson,* we noted that a jury, when determining whether an individual suffers from a behavioral abnormality that predisposes him to engage in predatory acts of sexual violence, must resolve a multifaceted inquiry. *See id.* at 195–96. Specifically, we stated that "to qualify for SVP status, a person must not only have an acquired or congenital condition, but he must also be predisposed to committing a sexually violent offense to the extent that he becomes a menace to the health and safety of another person." *Id.* at 199 (citing Tex. Health & Safety Code Ann. § 841.002(2)). Because the question of whether a person is predisposed to committing a future act of sexual violence is one of the facts to be resolved by the jury in SVP cases, we held that opinions of persons possessing the requisite training and experience in providing treatment to persons with sexual abnormalities together with the required expertise to assess recid-

ivism risks could provide opinions that assist the trier of fact. *See id.* at 199 (citing Tex.R. Evid. 702). Because Dr. Shursen possessed special skills in administering actuarial tests relevant to assessing an individual's risk of reoffending, we concluded that "Dr. Shursen possessed the necessary qualifications to provide an opinion related to her assessment of the risk that Dodson would commit a future act of sexual violence, a component part of the broad-form issue the jury evaluated and answered." *Id.* at 201.

Although the record before us in this case includes a *Daubert* hearing, in which the parties further explored Dr. Shursen's qualifications as an expert, the result we reach here is no different than the one we reached in *Dodson.* On this record, we again conclude that Dr. Shursen offered a sufficient foundation to establish that her opinion would have assisted the jury in its resolution of whether Bohannan would, beyond a reasonable doubt, likely commit a future sexually violent offense. The extent to which Dr. Shursen did not possess the same forensic training and experience as the State's experts are matters the jury may consider in weighing her testimony.

When a trial court excludes expert testimony, the Texas Supreme Court has recently explained: "A trial court abuses its discretion in excluding expert testimony if the testimony is relevant to the issues in the case and is based on a reliable foundation." *State of Tex. v. Cent. Expressway Sign Associates,* 302 S.W.3d 866, 870 (Tex. 2009). Even if we or the trial court disagrees with an expert's opinion, the question the court resolves in determining the admissibility of the expert's testimony is whether the expert's testimony is based on a reliable foundation and whether the testimony is relevant to the case. *See id.* We conclude that Dr. Shursen's proffered testimony was both relevant and based on

a reliable foundation. TEX. HEALTH & SAFETY CODE ANN. § 841.003. We hold the trial court erred in excluding Dr. Shursen's opinion on whether Bohannan was likely to reoffend.

### Harm Analysis

Having determined that Dr. Shursen's testimony should have been admitted, we must determine if the trial court's error in excluding her testimony was harmful. *See* TEX. R. APP. P. 44.1. The State argues that, even if we conclude that error occurred, there is no harm because Dr. Shursen's opinion is greatly outweighed by the opinion testimony of the State's experts. Bohannan, on the other hand, argues that depriving him of his only expert denied him of his right to receive a fair trial.

■ Whether Bohannan would or would not reoffend was one of the critical issues to be resolved by the jury. *See In re Commitment of Dodson*, 311 S.W.3d 194; *see also Cent. Expressway*, 302 S.W.3d at 870 ("[I]f erroneously admitted or excluded evidence was crucial to a key issue, the error is likely harmful."); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex.1995). Here, the record demonstrates that the trial court appointed Dr. Shursen as a consulting expert and that Bohannan timely designated her to testify as an expert at trial. The trial court conducted the hearing on Dr. Shursen's qualifications after voir dire, and then struck her as an expert immediately before the parties began to present the evidence to the jury. The record further reflects that Dr. Shursen had a sufficient foundation to provide an expert opinion to the jury. Bohannan had no other experts that supported his contention that he was not likely to reoffend and therefore, Dr. Shursen's testimony would not have been cumulative of other expert testimony in the case. *See Cent. Expressway*, 302 S.W.3d at 870. Bohannan's own testimony that he would not reoffend was likely viewed by the jury as self-serving.

Dr. Shursen's testimony addressed whether Bohannan was likely to reoffend, a critical issue disputed by the parties, and without her testimony, the jury had only the State's experts to guide them in determining one of the critical issues in the case. We cannot conclude that depriving the jury of Dr. Shursen's testimony, under these circumstances, was harmless. *See In re Commitment of Dodson*, 311 S.W.3d at 204; *see* TEX. R. APP. P. 44.1(a)(1).

Because the trial court committed harmful error, we sustain Bohannan's third issue. We reverse and remand Bohannan's case for a new trial. As Bohannan's other issues would not result in greater relief, it is not necessary that we address Bohannan's first, second, fourth, fifth, or sixth issues. *See* TEX. R. APP. P. 47.1.

REVERSED AND REMANDED.