Walker, J., delivered the opinion for a unanimous Court.
Pursuant to Chapter 841 of the Health and Safety Code, a jury found Appellant Michael Wayne Bohannan to be a sexually violent predator. The trial court in that case adjudicated Appellant as a sexually violent predator and ordered him to be civilly committed for treatment.[1] Appellant appealed the judgment of civil commitment, and while the appeal was pending he violated the civil commitment order. The *169 court of appeals eventually reversed the judgment of civil commitment. Appellant was charged and convicted of violating the civil commitment order, and he was sentenced to life in prison. Because Appellant was required to follow the terms of the civil commitment order while the appeal of the judgment of civil commitment was pending, the court of appeals correctly affirmed his conviction. We affirm the judgment of the court of appeals.
Background
In 1982, Appellant rode his bicycle past K.C.'s home several times. Bohannan II , 388 S.W.3d at 299. Through a window, he watched her inside. Id. One evening, donning a ski mask and carrying a large knife, Appellant entered K.C.'s home through the rear door. Id. He walked down the hallway past a room in which a child was sleeping and entered K.C.'s bedroom, where she was lying on the bed and reading a newspaper. Id. Appellant orally and vaginally raped her and then left. Id. Appellant would later testify in his civil commitment case that he thought he would get some satisfaction or self-fulfillment out of raping K.C. Id. In some way, he also expected K.C. to "like being raped." Id.
Some three weeks later, Appellant was driving around on his lunch break when he saw P.H. enter her home. Id. He stopped, put on his ski mask, picked up his knife, and walked through the front door. Id. Inside, P.H. was with a group of children. Id. Appellant forced P.H. to move the children to another room, and then he orally and vaginally raped P.H. in her bedroom. Id. As with the earlier rape of K.C., Appellant thought he would get some satisfaction from raping P.H. and "maybe ... feel more of a man." Id.
Appellant was apprehended, and in 1983, he pleaded guilty to two counts of aggravated rape with a deadly weapon and was sentenced to twenty years imprisonment.[2] Id. In 1991, Appellant was released on mandatory supervision. Id. In April 1992, he was charged with attempting to kidnap a nine year old girl in a K-Mart store. Id. at 299-300. He pleaded guilty to the new charge in February 1993, his mandatory supervision was revoked, and he returned to prison. Id.
In 1998, Appellant was again released on mandatory supervision, and in 2000, he moved to South Carolina to live with his mother. Id. at 300. While there, he was convicted of exposing his genitals to an eight year old girl in a toy store, and he was sentenced to three years imprisonment. Id. In 2002, Appellant's mandatory supervision was again revoked, and he returned to prison in Texas. Id.
In 2004, Appellant was released on mandatory supervision for a third time. Id. Two years later in 2006, he was caught viewing child pornography on a county law library computer, even though he was enrolled in sex offender therapy at the time, and his mandatory supervision was again revoked. Id. After a psychologist reported that Appellant was a sexually violent predator, the State petitioned for him to be civilly committed. Id. A civil commitment trial was held in which the State had two experts testify. Id. at 301. However, Appellant's designated expert was not permitted to testify. Id. The jury determined that Appellant suffered from a behavioral abnormality, as defined in the sexually violent *170 predator statute, and the trial court accordingly adjudicated Appellant as a sexually violent predator and ordered Appellant to be civilly committed. Id. at 302. Appellant appealed this decision. See In re Commitment of Bohannan , 379 S.W.3d 293 (Tex. App.-Beaumont 2010) (mem. op.) ( Bohannan I ).
Meanwhile, he was transferred to the supervision of the Council on Sex Offender Treatment. Bohannan v. State , No. 09-13-00090-CR, 2014 WL 5490936 (Tex. App.-Beaumont Oct. 29, 2014) (mem. op., not designated for publication) ( Bohannan III ).[3] Under the civil commitment order, Appellant was required to reside in a secured residential facility and to comply with the written requirements of the Council of Sex Offender Treatment and the case manager assigned to his case. Id. , at *1. The written requirements instructed Appellant to comply with the rules of the residential facility. Id. , at *2. The civil commitment order also required Appellant to wear a GPS monitor, be subject to monitoring, and comply with the written instructions for the monitoring system, which required Appellant to be tracked twenty-four hours a day, seven days a week. Id. Appellant's tracking device consisted of three parts: an ankle bracelet, a miniature tracking device (MTD) that Appellant would carry with him throughout the day, and a charging station for the MTD. Rep. R. vol. 3, 45-46, vol. 4, 15. The MTD itself reported Appellant's GPS location information, and the bracelet was simply a means of ensuring that the MTD was with Appellant at all times and that Appellant's tracking data was accurate. Rep. R. vol. 4, 17-18. If the bracelet and the MTD were too far apart, a bracelet gone alert would be sent by the MTD to Appellant's case manager, indicating that the bracelet and Appellant, who would be wearing the bracelet, were no longer near the MTD and were not being tracked. Rep. R. vol. 4, 18-19. Bracelet gone alerts were considered to be violations of the monitoring system requirements, which themselves would be violations of the civil commitment order. Rep. R. vol. 3, 46. The MTD regularly needed to be recharged in the base charging station, and while it was charging Appellant would have to stay close to the MTD or else trigger a bracelet gone alert. Rep. R. vol. 3, 43.
On February 14, 2009, the MTD generated a "bracelet gone" alert. Bohannan III , 2014 WL 5490936, at *2. Further alerts were generated on March 2, 8, 18, and 27, 2009. Rep. R. vol. 3, 47. Most of the alerts were for a couple of minutes, and Appellant claimed that he was asleep during those alerts or that the MTD was malfunctioning. Rep. R. vol. 3, 49-57. However, the March 18 alert lasted for seventeen minutes, and Appellant's explanation was that he left the MTD in his room and went to another part of the facility. Bohannan III , 2014 WL 5490936, at *2. The five bracelet gone alerts were alleged as violations of the civil commitment order. Id.
On July 22, 2010, the court of appeals reversed the judgment of civil commitment and remanded for a new civil commitment trial. See Bohannan I , 379 S.W.3d at 300. The court of appeals found that the trial court erred by excluding Appellant's expert witness from testifying, and the error *171 was not harmless. Id. Eight months after the court of appeals's decision, on March 15, 2011, Appellant's case manager requested Appellant sign and acknowledge written civil commitment requirements, but Appellant refused. Bohannan III , 2014 WL 5490936, at *3. Appellant's case manager made another attempt on March 17, 2011, but he was again refused by Appellant. Id. The refusals were alleged as additional violations of Appellant's civil commitment order. Id.
On April 24, 2011, Appellant got into a dispute with the staff at the facility. Id. He claimed that he was being denied his medication, and he became argumentative. Rep. R. vol. 3, 84-85. He pounded on a counter, cursed at personnel, and refused to return to his room. Bohannan III , 2014 WL 5490936, at *3. Local police responded to the disturbance, and they later returned to execute a parole revocation warrant and take Appellant to jail. Id. This incident was also alleged as a violation of the civil commitment order. Id.
Meanwhile, the State sought review of the court of appeals's decision reversing the judgment of civil commitment. See Bohannan II , 388 S.W.3d at 302. On August 31, 2012, the Texas Supreme Court affirmed the judgment of the court of appeals. Id. at 307. Nevertheless, a couple of months later in October of 2012, the State indicted Appellant of violating the civil commitment order. Bohannan III , 2014 WL 5490936, at *1. The mandate of reversal was issued on January 18, 2013. Id. , at *3. Still, the State proceeded with the prosecution, and on February 12, 2013, Appellant was convicted by a jury of violating the civil commitment order. Id. , at *1. Finding enhancement paragraphs alleging the rape convictions and the South Carolina indecent exposure conviction to be true, the jury assessed a sentence of life in prison. Id.
The court of appeals upheld Appellant's conviction. Id. , at *7. Appellant filed a pro se petition with this Court for discretionary review alleging several grounds of error. On this Court's own motion, we granted review for one issue: Can a conviction for violating a civil commitment order be upheld when the underlying commitment order has been reversed on appeal?
Jurisdiction
Appellant first argues that the conviction cannot be upheld because the reversal of the civil commitment order deprived the trial court of jurisdiction. This is so, he contends, because a valid indictment is necessary for jurisdiction. According to Appellant, the indictment in this case is invalid because it does not state an offense, and it does not state an offense because there is no valid judgment or order of civil commitment.
Under the Texas Constitution, the presentment of an indictment or information to a court invests that court with jurisdiction over the case. Tex. Const. art. V, § 12 (b). To constitute an indictment or information, an instrument must charge a person with the commission of an offense. Teal v. State , 230 S.W.3d 172, 179 (Tex. Crim. App. 2007) ; Cook v. State , 902 S.W.2d 471, 477 (Tex. Crim. App. 1995). The proper test to determine if a charging instrument alleges an offense, for purposes of jurisdiction analysis, is whether the allegations in it are clear enough that one can identify the offense alleged. Teal , 230 S.W.3d at 180. If they are, then the indictment is sufficient to confer subject-matter jurisdiction. Id. "Stated another way: can the trial court (and appellate courts who give deference to the trial court's assessment) and the defendant identify what penal code provision is alleged and is that *172 penal code provision one that vests jurisdiction in the trial court?" Id.
The indictment in this case alleged:
THE GRAND JURY, for the County of Montgomery, State of Texas, duly selected, empaneled, sworn, charged, and organized as such by the 284th Judicial District Court for said County, upon their oaths present in and to said court that Michael Wayne Bohannan, hereinafter styled Defendant, on or about February 14, 2009 and continuing until on or about April 24, 2011, and before the presentment of this indictment, in the County and State aforesaid, did then and there intentionally or knowingly violate civil commitment requirements of Section 841.082 of the Texas Health and Safety Code as required by the Final Judgment and Order of Civil Commitment entered in Cause Number 08-07-06907-CV, In Re: The Commitment of Michael Wayne Bohannan, in the 435th Judicial District Court of Montgomery County, Texas, to wit
Clerk's R. 12. Appellant was prosecuted under section 841.085 of the Health and Safety Code. At the time of Appellant's prosecution, that provision stated:
(a) A person commits an offense if, after having been adjudicated and civilly committed as a sexually violent predator under this chapter, the person violates a civil commitment requirement imposed under Section 841.082.
Tex. Health & Safety Code Ann. § 841.085(a) (West 2010).[4] Plainly, the accusations of the indictment are clear enough to identify section 841.085. It alleges that Appellant "violate[d] civil commitment requirements of Section 841.082," and the requirements were imposed "by the Final Judgment and Order of Civil Commitment entered in Cause Number 08-07-06907-CV, In Re: Civil Commitment of Michael Wayne Bohannan."
Appellant's challenge to the indictment in this case is more accurately a challenge that one of the elements alleged is false or unsupported, or that is has been adjudged that way. This does not attack the indictment. It attacks a fact alleged in the indictment as false. Assuming, for the sake of argument, that the alleged fact that there was a civil commitment order is not true, the result is not an invalid indictment. The State would simply be unable to prove that the offense occurred. The indictment itself still states facts that, if true , show an offense. Because the indictment is sufficient, the trial court was vested with jurisdiction over Appellant's case, and Appellant's jurisdictional argument fails.
Status at the Time
Appellant next argues that the court of appeals improperly expanded responsibility under section 841.085 to those who had the status of one under a civil commitment order at the time of an alleged order violation, instead of to those who are under a valid order of commitment at the time of trial. Recently, a similar question was raised and answered by our decision in Stevenson v. State , 499 S.W.3d 842 (Tex. Crim. App. 2016). In Stevenson , the defendant was also under a civil commitment order, which he appealed. Id. at 846. Similarly, Stevenson violated the order while the appeal was pending. Id. He was subsequently charged and convicted under section 841.085 of violating the civil commitment order. Id. The conviction was upheld by the court of appeals.
*173 Id. at 844. On discretionary review to this Court, Stevenson claimed that he could not be prosecuted for violating the commitment order because that order was on appeal and therefore not a final judgment. Id. at 847. Rejecting a finality requirement, we held that because section 841.081 explicitly states that a commitment order is effective immediately upon entry, enforcement of the order by means of prosecution would not be stayed until the order was affirmed or reversed on appeal. Id. at 848 ; Tex. Health & Safety Code Ann. § 841.081(a) (West 2017).
Addressing a separate double jeopardy argument, we further explained that a civil commitment order violation is a circumstances surrounding the conduct crime. Stevenson , 499 S.W.3d at 851. In these types of cases, the focus is on the particular circumstances that exist rather than the discrete, and perhaps different, acts that the defendant might commit under those circumstances. Id. A violation therefore arises only by the circumstance that the person has been adjudicated a sexually violent predator who has been civilly committed. Id. The forbidden act is violating the civil commitment order. Id. The failure to comply with statutorily imposed conditions is proscribed solely by virtue of the person being a civilly committed sexually violent predator. Id. Failure to abide by any of the statutory requirements is the means by which the State can prove a sexually violent predator violated the civil commitment order. Id. It is the very circumstance that the person has been adjudicated a sexually violent predator resulting in a civil commitment order that renders otherwise legal conduct criminal. Id.
The case before the Court today is controlled by Stevenson . Stevenson was subject to an order of civil commitment, which he appealed. He violated that order while the appeal was pending. We upheld the conviction in part because a violation of a civil commitment order is not dependent on the order being final. The circumstance of being adjudicated and ordered to be civilly committed is the gravamen of the offense. Here, Appellant was subject to an order of civil commitment, which he appealed. He violated that order five times with the five bracelet gone alerts before the court of appeals delivered its opinion. The circumstance that Appellant had been adjudicated and ordered to be civilly committed was present at the time of each of those bracelet gone alerts. Therefore, under Stevenson , the court of appeals did not err in affirming Appellant's conviction for violating the civil commitment order.
But the court of appeals did not have the benefit of our September 21, 2016 decision in Stevenson when it decided Appellant's case on October 29, 2014, nearly two years earlier. Instead, the court of appeals based its decision on our opinion in Ex parte Jimenez and the Texas Supreme Court's opinion in In re Sheshtawy . See Ex parte Jimenez , 361 S.W.3d 679 (Tex. Crim. App. 2012) ; In re Sheshtawy , 154 S.W.3d 114 (Tex. 2004). Appellant claims that certain language in Stevenson is contrary to those cases and requires reversal of the court of appeals's decision based upon Jimenez and Sheshtawy . In our view, Stevenson does not conflict with those cases; indeed, they are in harmony with each other, as we will explain.
In Jimenez , the applicant in that case was originally convicted of rape of a child in 1982.[5] Jimenez , 361 S.W.3d at 680. Nine *174 years later, he was convicted of possession of heroin and possession of a firearm by a felon, with the underlying felony being his prior child rape conviction. Id. at 680-81. In 1998, Jimenez challenged the child rape conviction, claiming that his plea in that case was involuntary due to ineffective assistance of counsel, and we granted habeas relief. Id. at 681 ; Ex parte Jimenez , No. 73,544 (Tex. Crim. App. Sept. 29, 1999) (per curiam) (not designated for publication). Jimenez then sought habeas relief on his conviction for possession of a firearm by a felon, arguing that it was void because the underlying felony had been set aside. Jimenez , 361 S.W.3d at 681. We reaffirmed our holding in Mason , that in order to obtain a valid conviction for unlawful possession of a firearm by a felon, the State is required to prove the defendant's felony status at the time of the possession of the firearm. Id. at 683 (citing State v. Mason , 980 S.W.2d 635, 641 (Tex. Crim. App. 1998) ). Therefore, if a defendant had the status of a felon at the time of the commission of the offense, his conviction would not be void even if the status changed after the commission of the offense, such as if the predicate felony conviction was subsequently set aside. Id. at 683-84. Jimenez's conviction was valid because he had the status of a felon at the time he possessed the firearm. Id. at 684.
Cuellar v. State , also cited in Jimenez , provides a useful example of the same rule. See id. at 683 ; Cuellar v. State , 70 S.W.3d 815 (Tex. Crim. App. 2002). The defendant, Rudy Cuellar, pled guilty to felony possession of heroin. Cuellar , 70 S.W.3d at 816. He successfully completed community supervision, and, in accordance with article 42.12, section 20 of the Code of Criminal Procedure, the trial court entered an order setting aside Cuellar's conviction and dismissing the indictment against him. Id. Fifteen years later, Cuellar was arrested and convicted of possession of a firearm by a felon. Id. at 817. We held that the article 42.12, section 20 order setting aside the felony conviction released Cuellar from all penalties and disabilities resulting from the conviction, and, thus, there was no predicate felony conviction to support the conviction for unlawful possession of a firearm by a felon. Id. at 820. Cuellar's conviction was invalid because he did not have the status of a felon at the time he possessed the firearm.
We also based our decision in Jimenez on Lewis v. United States , a United States Supreme Court opinion dealing with a similar issue. Jimenez , 361 S.W.3d at 682-83 (discussing Lewis v. United States , 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980) ). The defendant in Lewis was originally convicted in Florida of felony breaking and entering with intent to commit a misdemeanor. Lewis , 445 U.S. at 56-57, 100 S.Ct. 915. Sixteen years later he was charged with violating the federal version of the felon in possession of a firearm statute. Id. at 57, 100 S.Ct. 915. At trial, his defense involved a collateral attack on the predicate felony conviction, that he was unrepresented by counsel in the earlier proceeding. Id. at 57-58, 100 S.Ct. 915. The United States Supreme Court held that the statute prohibited possession of a firearm by a convicted felon despite the fact that the predicate felony may be subject to collateral attack on constitutional grounds. Id. at 65, 100 S.Ct. 915. The Lewis case, we noted in Jimenez , implicitly held that the prosecution must prove the status of the defendant at the time he possessed the weapon. Jimenez , 361 S.W.3d at 683.
*175 In re Sheshtawy , the other case cited by the court of appeals in Appellant's case, involved criminal contempt in the context of the violation of a divorce decree. Sheshtawy , 154 S.W.3d at 116. The decree required Adel Sheshtawy to make spousal maintenance payments, which he did not do. Id. Enforcement proceedings were instituted, and the trial court granted motions for enforcement and for criminal and civil contempt. Id. at 116-17. For two counts of criminal contempt, the trial court ordered Sheshtawy confined for 180 days each, to be served concurrently. Id. at 117. The civil contempt was stacked on top of the criminal contempt sentences, to last until Sheshtawy paid the outstanding amount of spousal maintenance he owed. Id. Sheshtawy sought a writ of habeas corpus from the Texas Supreme Court. Id. In the meantime, the court of appeals reversed the award of spousal maintenance. Id. The Texas Supreme Court, addressing Sheshtawy's application for writ of habeas corpus, held that the trial court had jurisdiction to issue the criminal contempt order for violating the divorce decree, even though the decree itself was on appeal. Id. at 125. The civil contempt order became unenforceable after the court of appeals's reversal of the maintenance award. Id. at 126. The criminal contempt order was vacated, not because the trial court lost jurisdiction to impose criminal contempt by virtue of the reversal of the spousal maintenance award, but because the contempt order specifically provided that it could be probated by paying the spousal maintenance award. Id. Because the award was affected by the appeal, the criminal contempt was also affected by the appeal. Id. The Supreme Court made sure to clarify that the trial court retained the discretion to impose criminal contempt for the violation of the order occurring while it was on appeal. Id. Sheshtawy , though in the context of divorce proceedings, is in agreement with the rule of Jimenez , and thus of Lewis and Cuellar . At the time that Sheshtawy violated the divorce decree, the decree had not yet been reversed, he had the status of one subject to a court order, and he was obligated to follow it or suffer the threat of criminal contempt for disobeying the court's order.
These cases, though they were not cited in our Stevenson opinion and are in much different contexts, are all in alignment with the rule in Stevenson . The common thread is that the offenses are circumstances surrounding the conduct crimes, and the necessary circumstance is the defendant's status at the time of the offense. At the time Cuellar possessed his firearm, he was not a felon. His time as a felon ran from conviction until the trial court set aside the conviction and dismissed the indictment. In contrast, at the time Jimenez possessed his firearm, he was a felon. His time as a felon based upon his underlying conviction ran from his conviction until we granted habeas corpus relief and set aside the conviction. At the time Lewis possessed his firearm, his predicate felony conviction had not been set aside; instead, he attacked its constitutionality during the firearm proceeding. At the time Sheshtawy failed to pay spousal maintenance, he was subject to the divorce decree which was then on appeal. And returning to Stevenson , at the time Stevenson violated his civil commitment order, he was subject to that order which was also then on appeal.
Appellant, however, contends that a particular passage in our Stevenson opinion negates any notion that the rule in Jimenez and Sheshtawy have any sway in the case before us:
this logic does not apply to civil-commitment order violations simply because the statute requires an "adjudication," not a "conviction."
*176 Stevenson , 499 S.W.3d at 849. Appellant quotes this language and argues that the "logic" being dismissed in Stevenson is the logic of Jimenez and Sheshtawy , which was relied upon by the court of appeals. Appellant misinterprets and takes Stevenson out of context. The extract from Stevenson , in its full context, does not support Appellant's position:
In Jordan , we discussed Code of Criminal Procedure Article 42.12, § 15 's finality requirement in prior criminal convictions. There, we held that a prior felony conviction must be final to enhance the punishment in a subsequent prosecution. While the statute did not expressly require finality, we found a finality requirement in § 15 because without it, trial judges would have to predict an appellate court's decision in a pending case or risk judgments being overturned for events that occur while the case is pending. To reach this holding, we defined "final" in a manner consistent with the general principle that a conviction with a pending appeal is not final until the appellate court affirms the conviction and issues its mandate. Applying this principle, we explained that a pending appeal on a conviction must be resolved for a probated sentence to be a final conviction for enhancement purposes. When there is no pending appeal from the conviction, but there is an appeal only from a probation revocation, the conviction can be used as an enhancement. A deferred adjudication, however, becomes final only when guilt is adjudicated. We, therefore, held Jordan's community-supervision revocation was not final and could not be used to deny him community supervision in a subsequent prosecution. However, this logic does not apply to civil-commitment order violations simply because the statute requires an "adjudication," not a "conviction."
Stevenson , 499 S.W.3d at 848-49 (discussing Jordan v. State , 36 S.W.3d 871 (Tex. Crim. App. 2001) ). Clearly, the "logic" that did not apply was the logic in Jordan supporting a finality requirement for purposes of article 42.12, section 15 sentence enhancement. The logic was inapplicable because Stevenson was a case involving an order of civil commitment (not article 42.12, section 15 sentence enhancement), section 841.085 requires only an "adjudication," and section 841.081 provides that orders of civil commitment are effective immediately upon entry. Id. at 849.
Appellant also argues this case is distinguishable from Jimenez , because unlike Jimenez where the predicate felony conviction was set aside long after the unlawful possession of a firearm, in Appellant's case the order of civil commitment was reversed before Appellant's trial on the violation. Indeed, Appellant repeatedly stresses the importance of the fact that the reversal occurred before trial. Appellant misses the key point of Jimenez and of circumstances surrounding the conduct offenses in general. Such crimes are criminal only because certain circumstances surround the conduct , not the trial. If such circumstances do not surround the conduct, the conduct is not criminal. For felon in possession of a firearm cases like Cuellar and Jimenez , the necessary circumstance is that the defendant is a convicted felon. For violations of civil commitment orders, the necessary circumstance is that the defendant has been adjudicated and civilly committed. If the order was reversed before he violated the terms of the order, the necessary circumstance would be missing, Appellant would be innocent, and his conviction would be in error. But that is not what happened in this case. First, Appellant was adjudicated as a sexually violent predator and civilly committed. Next, he appealed the order. Then, he violated the order. After that, the order *177 was reversed. Finally, he was tried on the violation.
Therefore, we find Appellant's argument against the court of appeals's application of Jimenez and Sheshtawy unconvincing. In Stevenson we held that a civil commitment order is effective immediately upon entry, and jurisdiction to prosecute non-compliance is not dependent on being "final." Stevenson , 499 S.W.3d at 848. Therefore such prosecutions may proceed even when the order is on appeal. Id. This is consistent with the logic of the holdings of Cuellar , Jimenez , and Lewis that a conviction for a status-based offense will be upheld if the defendant had the requisite status at the time of the offense. Under both Stevenson and the Cuellar - Jimenez line of cases, Appellant's conviction is valid. At the time he violated the terms of the civil commitment order, he had the status of a person subject to a civil commitment order, which was immediately effective and enforceable by prosecution for non-compliance even while an appeal of the order itself is pending.[6]
Insufficient Evidence
Appellant also argues that there is insufficient evidence to support his conviction.
*178 He contends that because the civil commitment order was reversed on appeal, there is no valid civil commitment order in the record; because there is no valid civil commitment order, an element of the offense for which he was convicted cannot be proved; therefore, there is insufficient evidence to support his conviction.
When considering a claim of sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; Queeman v. State , 520 S.W.3d 616, 622 (Tex. Crim. App. 2017) ; State v. Bolles , 541 S.W.3d 128, 133-34 n.12, No. PD-0791-16, 2017 WL 4675659, at *4 n.12 (Tex. Crim. App. Oct. 18, 2017). This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Clayton v. State , 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In performing our sufficiency review, we may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. Dewberry v. State , 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We resolve inconsistencies in the evidence in favor of the verdict. Curry v. State , 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). We determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. Hooper v. State , 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).
Appellant was charged and convicted of an offense under section 841.085. Under the version of that statute in effect at that time, "a person commits an offense if, after having been adjudicated and civilly committed as a sexually violent predator under [Chapter 841 of the Health and Safety Code], the person violates a civil commitment requirement imposed under Section 841.082." Tex. Health & Safety Code Ann. § 841.085(a) (West 2010). As we explained above, in Stevenson we held that "a civil-commitment order violation is a circumstances-surrounding-the-conduct crime. A violation arises only by the circumstance that the person has been adjudicated a sexually violent predator who has been civilly committed." Stevenson , 499 S.W.3d at 851. The State must first prove that the circumstances surrounding the conduct exist. That is, the State must first prove that the defendant was adjudicated and civilly committed as a sexually violent predator.
At trial, the State introduced, as State's Exhibit 1, a copy of the Final Judgment in Cause Number 08-07-06907-CV, In Re: The Commitment of Michael Wayne Bohannan. Rep. R. vol. 7, Ex. 1. This exhibit shows that on January 22, 2009, a jury unanimously found beyond a reasonable doubt that Appellant was a sexually violent predator, and the trial judge "Ordered, adjudged, and decreed" that Appellant was a sexually violent predator and was to be civilly committed. Id. The State also offered into evidence, as State's Exhibit 2, a copy of the Order of Commitment, listing requirements in accordance with 841.082. Rep. R. vol. 7, Ex. 2. Appellant's position is that, by virtue of the court of appeals's reversal of the civil commitment order prior to the trial in this case, there is no civil commitment order. That is, the reversal made it as if the Final Judgment and the Order of Commitment never happened, and the State's two exhibits, as evidence of an adjudication and of civil commitment, are entitled to no weight.
*179 The jury in this case received copies of the Final Judgment and the Order of Commitment. Appellant did not object to the admission of those documents into evidence. During the cross-examination of the documents' sponsoring witness and during Appellant's case in chief, he did not introduce any evidence of his own suggesting that the documents were somehow incorrect, inauthentic, misleading, fraudulent, or forged. Considering all of the evidence on this element of the offense, and viewed in the light most favorable to the jury's guilty verdict, we are compelled to find that any rational fact finder would have concluded that the two documents before it-the copies of the Final Judgment and the Order of Commitment-were conclusive proof that Appellant was adjudicated as a sexually violent predator and then civilly committed. Appellant's sufficiency argument fails.
Due Process and Due Course of Law
Finally, Appellant argues that the conviction cannot be upheld because it would offend both due process under the Fourteenth Amendment to the United States Constitution and due course of law under the Texas Constitution.[7] According to Appellant, if he can be criminally prosecuted and sent to prison for violating a civil commitment order while an appeal of the order is still pending, and despite a reversal of the order before his trial on the violation, then the appeal of the order is rendered moot and any errors that may have occurred in the civil commitment trial are inconsequential.[8] This, Appellant claims, is fundamentally unfair and violates any notion of due process or due course of law. Finally, Appellant argues that the statute , section 841.085, requires a valid judgment adjudicating him as a sexually violent predator and order of civil commitment to support a conviction.[9]
As recited above, this is the entirety of Appellant's due process argument. His bare claim that the prosecution and conviction are "fundamentally unfair" and violate "any notion of due process or due course of law," with nothing else, is conclusory, does not make an argument, and does not contain any citations to appropriate authorities. See Tex. R. App. P. 38.1(I) ("The brief must contain a clear and concise argument for the contentions *180 made, with appropriate citations to authorities and to the record."). This is not enough to support reversal. Bell v. State , 90 S.W.3d 301, 305 (Tex. Crim. App. 2002) ("It is not sufficient that appellant raise only a general constitutional doctrine in support of his request for relief.") (citing Rhoades v. State , 934 S.W.2d 113, 119 (Tex. Crim. App. 1996) ). It is incumbent upon Appellant to cite specific legal authority and to provide legal arguments based upon that authority. Bell , 90 S.W.3d at 305 (Tex. Crim. App. 2002). We will not make novel legal arguments for him. Id. Accordingly, Appellant's due process argument is inadequately briefed, and we decline to address it. Salazar v. State , 38 S.W.3d 141, 147 (Tex. Crim. App. 2001) ; Ex parte Hernandez , 953 S.W.2d 275, 286 (Tex. Crim. App. 1997) ; Garcia v. State , 887 S.W.2d 862, 871 (Tex. Crim. App. 1994) ; Robinson v. State , 851 S.W.2d 216, 222 n.4 (Tex. Crim. App. 1991).
Conclusion
In conclusion, a conviction for violating a civil commitment order can be upheld when the underlying commitment order has been reversed on appeal. Appellant's civil commitment order was effective immediately upon entry. Once the order was issued, Appellant was obligated to follow it until it was eventually reversed. The fact that the order was reversed does not excuse violations occurring before the reversal. We affirm the judgment of the court of appeals upholding Appellant's conviction.

For a thorough explanation of the Texas scheme for the civil commitment of sexually violent predators under Chapter 841 of the Health and Safety Code, see generally Stevenson v. State , 499 S.W.3d 842, 844-46 (Tex. Crim. App. 2016) ; see also In re Commitment of Bohannan , 388 S.W.3d 296, 298-99 (Tex. 2012) (Bohannan II ).

The aggravated rape statute was repealed and replaced by the current aggravated sexual assault statute. Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, sec. 21.03, 1973 Tex. Gen. Laws 883, 916, repealed and replaced by Act of May 29, 1983, 68th Leg., R.S., ch. 977, § 12 and § 3, sec. 22.021, 1983 Tex. Gen. Laws 5311, 5321 and 5315(current version at Tex. Penal Code Ann. § 22.021 (West 2011 & Supp. 2016)).

Responsibility for the administration and implementation of the civil commitment program was transferred from the Council on Sex Offender Treatment in 2011 to a newly created state agency, the Office of Violent Sex Offender Management. Act of May 23, 2011, 82nd Leg., R.S., ch. 1201, § 2, sec. 420A.010 and § 4, 2011 Tex. Gen. Laws 3197, 3198-99 (current versions at Tex. Gov't Code Ann. § 420A.010 (West 2012), Tex. Health & Safety Code Ann. § 841.007 (West 2017) ). That agency is now known as the Texas Civil Commitment Office. Act of May 21, 2015, 84th Leg., R.S., ch. 845, 2015 Tex. Gen. Laws 2701.

Section 841.085(a) was amended in 2015 and currently criminalizes violations of only those requirements imposed by section 841.082(a)(1), (2), (4), and (5). Act of May 21, 2015, 84th Leg., R.S., ch. 845, § 19, 2015 Tex. Gen. Laws 2701, 2708.

Like the aggravated rape statute, the rape of a child statute was repealed and replaced by the aggravated sexual assault statute in 1983. Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, sec. 21.09, 1973 Tex. Gen. Laws 883, 917-18, repealed and replaced by Act of May 29, 1983, 68th Leg., R.S., ch. 977, § 12 and § 3, sec 22.021, 1983 Tex. Gen. Laws 5311, 5321 and 5315 (current version at Tex. Penal Code Ann. § 22.021 (West 2011 & Supp. 2016)).

Other jurisdictions have similarly upheld firearm possession convictions where the predicate felony is on appeal, and even if the appeal results in reversal. See DePugh v. United States , 393 F.2d 367 (8th Cir. 1968) (predicate felony indictment was ultimately quashed); United States v. Liles , 432 F.2d 18, 21 (9th Cir. 1970) (predicate felony conviction was on appeal and ultimately reversed); United States v. Williams , 484 F.2d 428, 430 (8th Cir. 1973) (predicate felony conviction was on appeal and ultimately reversed); United States v. Wooten , 503 F.2d 65, 66-67 (4th Cir. 1974) (predicate felony conviction was on appeal and ultimately affirmed); State v. Watie , 223 Kan. 349, 573 P.2d 1034, 1035-36 (1978) (predicate felony conviction was on appeal, trial court erred in quashing the possession of a firearm indictment); State v. Heald , 382 A.2d 290, 294-95 (Me. 1978) (predicate felony conviction on appeal); United States v. MacGregor , 617 F.2d 348 (3rd Cir. 1980) (predicate felony convictions were on appeal and ultimately reversed); Berg v. State , 711 P.2d 553, 554 (Alaska Ct. App. 1985) (predicate felony on appeal); Clark v. State , 739 P.2d 777, 781 (Alaska Ct. App. 1987) (predicate felony on appeal and ultimately reversed); State v. Lobendahn , 71 Haw. 111, 784 P.2d 872, 873 (1989) (predicate felony on appeal and reversed before trial).
The bail jumping cases also provide close analogies. Courts in that context have upheld convictions for bail jumping and failure to appear, even where the underlying charge is dismissed or the defendant is even acquitted. The Dallas Court of Appeals, in Small v. State , upheld a conviction for failing to appear. 692 S.W.2d 536, 538 (Tex. App.-Dallas 1985). Concluding that the gravamen of the offense of failing to appear for a felony offense is the failure to appear , the court held that whether the underlying felony offense is ever proven is immaterial and the State need only allege and prove that charges for a felony offense were pending against the defendant. Id. at 540 (emphasis in original); see also State v. DeAtley , 11 Kan.App.2d 605, 731 P.2d 318, 323 (Kan. 1987) (aggravated failure to appear for violation of bail bond is criminal offense in itself, and as such, is not dependant upon outcome of underlying charge); People v. Holcombe , 89 A.D.2d 644, 453 N.Y.S.2d 126, 127 (3d Dep't 1982) (fact that defendant was not convicted of underlying charge for which he was released on bail did not preclude defendant's conviction on charge of bail jumping); Williams v. United States , 331 A.2d 341, 342 (D.C. 1975) (fact that underlying burglary charge was dismissed did not render invalid defendant's conviction for wilfully failing to appear at preliminary hearing on burglary charge); People v. Minefee , 14 Ill.App.3d 796, 303 N.E.2d 591 (1st Dist. 4th Div. 1973) (subsequent determination that act under which defendant was convicted was void did not invalidate his conviction for jumping bail bond given in connection with such prosecution); Eaton v. State , 703 A.2d 637, 640-41 (Del. 1997) (citing Small with approval, and holding that defendant's acquittal on underlying charge of assault in second degree did not preclude his conviction for separate and distinct offense of breach of condition of release).

Although Appellant cites these two separate and distinct constitutional provisions, one federal and one state, he does not provide any reason to consider the due process question independently from the due course question. See, e.g. , Fleming v. State , 341 S.W.3d 415, 416 (Tex. Crim. App. 2011) (per curiam) (remanding case because the court of appeals failed to address a properly briefed independent due course of law claim). Accordingly, we address them as a single due process argument. See Emery v. State , 881 S.W.2d 702, 707 n.8 (Tex. Crim. App. 1994) (declining to address Texas Constitution-based argument where no argument or authority was presented as to why the Texas Constitution should afford any more protection than the federal constitution).

In the interest of justice, we briefly address Appellant's complaint that the prosecution and conviction mooted his appeal of the civil commitment order and made the errors in that proceeding inconsequential. First, the later criminal proceeding did not moot the earlier civil appeal. The civil commitment case was resolved before the criminal violation trial even began. Similarly, the later criminal proceeding had no effect on the error that occurred in the earlier civil commitment case. The error-the trial court's exclusion of Appellant's expert witness-led to the court of appeals reversing the civil commitment order. This is the complete opposite of the error being inconsequential. It had a consequence: the successful appeal.

Section 841.085 does not require a "valid" judgment of adjudication. It only requires an "adjudication," and the State does not have to show that the adjudication is final. Stevenson , 499 S.W.3d at 849.