

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00105-CR

Alphonso A. **MCCLOUD**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CR6735B
Honorable Joey Contreras, Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Patricia O. Alvarez, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: February 13, 2019

AFFIRMED

Alphonso A. McCloud was convicted by a jury of the offense of attack by dog causing serious bodily injury and sentenced to four years' imprisonment and a $10,000 fine. On appeal, McCloud challenges the sufficiency of the evidence to support his conviction. Specifically, McCloud contends the evidence "failed to establish [he] acted with criminal negligence." We affirm the trial court's judgment.

## BACKGROUND

Because McCloud only challenges the sufficiency of the evidence regarding whether he acted with criminal negligence, the following summarizes the trial testimony relevant to that issue.

Detective Robert Neaves testified he was assigned as the lead detective on a dog mauling case in March of 2017. Detective Neaves identified McCloud and his wife as the owners of the dog, which was a pit bull named Bully.[1] Detective Neaves went to the location of the attack with an officer from animal control two days after the attack occurred. Detective Neaves took photographs of McCloud's backyard, where Bully and another dog were kept, and the fence around the yard, including the gate and the latch to the gate. The photographs were admitted into evidence.

Detective Neaves stated the photographs depicted a wire being used as the mechanism to secure the gate of the fence. The wire was inserted through a hole in the latch intended for a lock and wrapped around a metal pole. Detective Neaves testified that whether a gap or opening remained in the gate would depend on how tightly the wire was wrapped around the pole. Detective Neaves also testified the gate would open if pressure was put on the bottom of the gate like by a dog pushing it from the inside, and opined the wire was not adequate to keep a dog inside the fence, especially a sixty-five to seventy pound dog like Bully.

Detective Neaves testified he interviewed McCloud who stated Bully had gotten out of the yard several times. After one of those times, McCloud obtained a lock to secure the gate. McCloud told Detective Neaves Bully previously bit his niece and had to be kept away from another individual who frequented the house. McCloud also stated Bully bit a cable employee.

Anthony Grinolds, who lived across the street from the victim, Doris Mixon-Smith, testified McCloud moved to the neighborhood in September or October of 2016. After McCloud

---

[1] McCloud's wife was also convicted; however, this appeal relates only to McCloud's conviction.

moved to the neighborhood, Grinolds testified he was assisting Mixon-Smith with work in her backyard. When he turned on a weed eater, Bully slammed against the fence several times. Grinolds further testified he had seen Bully running lose in the neighborhood at least twice. On the last occasion which was a month or a month and a half before the attack, he went to McCloud's house and told the young girl who answered the door that Bully was loose. Grinolds testified the gate at McCloud's house was previously secured by a padlock visible from outside the gate; however, on the day of the attack, the padlock was not in place.

Mixon-Smith testified she saw Bully outside the fence on two occasions. When Mixon-Smith helped McCloud put a lock on the outside of his gate, McCloud told her the dogs could lift up the latch of the gate. On the day she was attacked, Mixon-Smith stated the lock was not on the gate, and she saw Bully push against the gate while she was mowing. The gate slightly opened, and she pushed it closed with her lawn mower. She then knocked on McCloud's door and told his niece that she needed to put the lock back on the gate. McCloud's niece told Mixon-Smith she was afraid of the dog but would try to get somebody to take care of it. Later that same day, Mixon-Smith was working in her yard when Bully attacked her. Mixon-Smith suffered severe injuries as a result of the attack including the partial amputation of one of her arms. A video was admitted into evidence that showed the viciousness of the attack. The officer who arrived on the scene during the attack and shot Bully described Bully as chewing and eating Mixon-Smith's arm.

Officer Jennifer Fried, who works for Animal Care Services investigating animal attacks, testified she accompanied Detective Neaves to McCloud's residence to investigate the attack on Mixon-Smith. In investigating the fence, the only locking mechanism was a wire which Officer Fried opined was not adequate security. Officer Fried also testified she had been involved in a prior investigation when Bully bit a cable employee in October of 2016.

McCloud testified he was aware of two occasions Bully got out of the yard before the attack on Mixon-Smith. McCloud stated Bully was a very loving dog, and he was not aware of any other incidents in which Bully acted dangerously other than those involving his niece and the cable employee. McCloud testified Bully only scratched the cable employee and further testified his niece provoked Bully. With regard to the lock on the gate, McCloud testified he removed the lock because he kept forgetting the code, and the lock was inconvenient when the person came to mow the yard. When he removed the lock, McCloud testified he bent and twisted a metal rod to secure the gate. McCloud admitted that he told Detective Neaves that Mixon-Smith complained about his removal of the lock. McCloud was shown the photograph of the locking mechanism Detective Neaves and Officer Fried described as a wire and he described as a rod. McCloud testified the wire or rod was equivalent in security to the prior lock.

McCloud's wife testified she demonstrated to Detective Neaves how the gate was secured with the wire or rod so the latch could not lift up and allow the gate to be opened. She described the wire or rod as very strong and stated it was very difficult for her to wrap it around the pole. She further stated that when the wire or rod was put on the gate, it was never removed until Detective Neaves asked to see the backyard. McCloud's wife denied that Bully bit their niece and stated she only observed a scratch on the cable employee.

After hearing the evidence, the jury found McCloud guilty of the offense. McCloud appeals contending the evidence is insufficient to establish he acted with criminal negligence.

## STANDARD OF REVIEW

"When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018) (citing *Jackson v. Virginia*, 443 U.S. 307, 319

(1979)). The jury is the sole judge of the credibility of the witnesses, and we presume the jury resolved any conflicting inferences in favor of the verdict. *Id*. at 733. "Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial." *Id*. "In performing our sufficiency review, we may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder." *Bohannan v. State*, 546 S.W.3d 166, 178 (Tex. Crim. App. 2017).

## DISCUSSION

Section 822.005 of the Texas Health and Safety Code entitled "Attack by Dog" provides "[a] person commits an offense if the person is the owner of a dog and the person:"

> (1) with criminal negligence, as defined by Section 6.03, Penal Code, fails to secure the dog and the dog makes an unprovoked attack on another person that occurs at a location other than the owner's real property or in or on the owner's motor vehicle or boat and that causes serious bodily injury, as defined by Section 1.07, Penal Code, or death to the other person[.]

TEX. HEALTH & SAFETY CODE ANN. § 822.005(a)(1). Section 822.001(4) of the Code defines the term "secure" as follows:

> (4) "Secure" means to take steps that a reasonable person would take to ensure a dog remains on the owner's property, including confining the dog in an enclosure that is capable of preventing the escape or release of the dog.

TEX. HEALTH & SAFETY CODE ANN. § 822.001(4). Finally, section 6.03 of the Texas Penal Code defines the term "criminal negligence" as follows:

> A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(d).

The Texas Court of Criminal Appeals has held section 822.005(a)(1) clearly defines the elements of the prohibited conduct: "a mens rea of criminal negligence, and the actus reus of failing to secure the dog." *Watson v. State*, 369 S.W.3d 865, 871 (Tex. Crim. App. 2012). Therefore, to establish the criminal negligence element of the offense, the evidence must establish the dog owner ought to be aware of a substantial and unjustifiable risk that he has failed to secure his dog, and his failure to perceive that risk constitutes a gross deviation from the standard of care a reasonable person would exercise under the circumstances.

The evidence presented established Bully was able to escape the backyard unless properly secured. From the testimony of Detective Neaves and Officer Fried, the jury could have believed McCloud should have been aware that removing the lock on the gate and replacing it with the wire or rod depicted in the photograph created a substantial and unjustifiable risk of Bully escaping from the yard, and McCloud's failure to perceive that risk was a gross deviation from the standard of care a reasonable person would exercise under the circumstances.[2] Although McCloud argues the evidence did not establish Bully escaped through the gate, the jury could have reasonably made that inference. Having reviewed all of the evidence, we hold the evidence is sufficient to prove McCloud acted with criminal negligence in failing to secure Bully.

**CONCLUSION**

The trial court's judgment is affirmed.

Liza A. Rodriguez, Justice

DO NOT PUBLISH

---

[2] In his brief, McCloud asserts he was not living at the home on the day of the attack; however, this statement was only supported by his own testimony which the jury could have disbelieved. Furthermore, the evidence was undisputed that McCloud replaced the lock with the wire.