

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CARLOS MENDOZA MORA, | § | No. 08-24-00076-CR |
| Appellant, | § | Appeal from the |
| v. | § | 109th Judicial District Court |
| THE STATE OF TEXAS, | § | of Andrews County, Texas |
| Appellee. | § | (TC# 8295) |

## MEMORANDUM OPINION

A jury found Appellant Carlos Mendoza Mora guilty of possession of a controlled substance and unlawful possession of a firearm by a felon. The jury assessed punishment at four years' and three years' confinement, respectively. In a single issue on appeal, Appellant asserts the trial court committed reversible error by providing the jury with a definition of "intentionally" or "with intent" in the abstract portion of the jury charge related to the offense of unlawful possession of a firearm by a felon, a "circumstance surrounding the conduct" offense. Because we conclude Appellant was not egregiously harmed by the alleged error, we affirm.

## I. BRIEF BACKGROUND

As Appellant does not raise an issue regarding the sufficiency of the evidence to support his conviction, we limit our discussion of the facts to those necessary to resolve the appeal. *See*

Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

Several witnesses testified during the State's case-in-chief, and Appellant did not call any witnesses to testify on his behalf. Several exhibits were admitted in evidence, including a certified copy of a judgment of conviction showing Appellant had pled guilty to possession of a controlled substance (cocaine) in May 2008 and an order discharging him from community supervision in October 2010.

Andrews Police Department Sergeant John Guy testified that on the night of May 15, 2021, he responded to a call that a man had been shot in the abdomen during a domestic dispute between the man and his wife. Although Appellant was not involved in the incident, he was detained as a potential witness. As part of his on-scene investigation, Sergeant Guy took several photographs, including one of a pistol under the driver's seat of Appellant's truck, which was parked in the driveway of the couple's house. Subsequent testing of a shell casing found at the scene showed it did not come from the pistol inside Appellant's truck.

Andrews Police Department Officer Micah Stewart testified he was the first officer to arrive at the scene, where he saw Appellant standing next to a tree. At some point, Appellant was patted down for weapons and placed in the back seat of Officer Stewart's patrol car because it was raining. He was not handcuffed or placed under arrest.

The jury viewed a body camera video of the conversation with Appellant while he sat in the backseat of the patrol car. Officer Stewart asked Appellant what was in his truck that they should know about, and Appellant said, "a bottle of Crown" and "a 45." Officer Stewart asked Appellant if he was a felon and Appellant said he was. Officer Stewart then left Appellant alone in the patrol car while he went to find Andrews Police Department Sergeant Davis.

Officer Stewart and Sergeant Davis walked back to Officer Stewart's vehicle to speak with Appellant. While Sergeant Davis spoke to Appellant, Officer Stewart stood nearby and recorded the conversation on his body camera.[1] Once at Officer Stewart's vehicle, Sergeant Davis asked Appellant "what's going on," and Appellant said he brought the victim's wife (Amanda) to the house. He said Amanda had a gun with her when she entered the house and he heard one gunshot. Appellant brought his own gun, which he said was "a 45," because Amanda told him she was "having trouble" with her husband and he was "crazy." Appellant gave the officers permission to enter his truck and retrieve the gun. The video also showed the retrieval of the gun and bullets from inside Appellant's truck.

Officer Stewart testified that Appellant's speech was slurred, his eyes were bloodshot, and his breath smelled of alcohol. Officer Stewart conducted a series of standardized field sobriety tests to determine whether Appellant was under the influence of alcohol or narcotics. Officer Stewart asked Appellant if he had used any drugs, to which Appellant responded "meth" and that he had a pipe in his pocket. Officer Stewart retrieved from Appellant's pants a container of a crystal-like substance that was later confirmed to be methamphetamine hydrochloride. Officer Stewart arrested Appellant for possession of a controlled substance.

The jury charge informed the jury that Appellant was accused of the offenses of possession of a controlled substance and unlawful possession of a firearm by a felon. The charge then instructed the jury on the law applicable to each charge. The jury found Appellant guilty of both offenses.

---

[1] Sergeant Davis did not testify at trial.

## II. ARGUMENT ON APPEAL

In his sole issue on appeal, Appellant complains about the following definitions contained in the portion of the charge related to the offense of unlawful possession of a firearm by a felon:[2]

> A person acts "intentionally" or "with intent" *with respect to the nature of his conduct or to a result of his conduct* when it is his conscious objective or desire to engage in the conduct or cause the result. [Emphasis added.]

> A person acts knowingly, or with knowledge, *with respect to the nature of his conduct* or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. [Emphasis added.]

Appellant contends unlawful possession of a firearm by a felon is a "circumstances surrounding the conduct" offense, not a "nature of conduct" or a "result of conduct" offense. Therefore, he asserts, including the nature-of-the-conduct language in the definitions was erroneous because they failed to tailor the definition to "the circumstances surrounding the conduct." The State concedes error but argues Appellant was not egregiously harmed by the error.

## III. APPLICABLE LAW

Generally, a trial court should tailor language regarding culpable mental states to the conduct elements of the offense. *Kersey v. State*, No. 08-20-00037-CR, 2021 WL 5860920, at *9 (Tex. App.—El Paso Dec. 10, 2021, pet. ref'd) (not designated for publication). Penal Code § 6.03 provides (1) the definitions of four culpable mental states (intentionally, knowingly, recklessly, and criminally negligent), (2) two possible conduct elements (nature of the conduct and result of the conduct), and (3) the effect of the circumstances surrounding the conduct. *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015); *see* Tex. Penal. Code Ann. § 6.03(a) ("intentionally, or

---

[2] Appellant does not complain about any portion of the charge related to possession of a controlled substance.

with intent"); *Id.* § 6.03(b) ("knowingly, or with knowledge"). "Thus, with respect to the definition of 'intentionally' and 'knowingly,' section 6.03 delineates [the following] 'conduct elements' that may be involved in an offense: (1) the nature of the conduct; (2) the circumstances surrounding the conduct; and (3) the result of the conduct." *Kersey*, 2021 WL 5860920, at *8.

On appeal, Appellant contends a hypothetically correct jury charge would have been as follows: "A person acts knowingly or with knowledge with respect to the 'circumstances surrounding his conduct' when he is aware that the circumstances exist." Assuming the inclusion of the complained-of definitions was erroneous as to the offense of unlawful possession of a firearm by a felon, we next consider whether Appellant was harmed.

Because Appellant did not object at trial to the language in the jury charge, the record must show egregious harm. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022). Egregious harm exists if the error affects the very basis of the defendant's case, deprives him of a valuable right, or vitally affects a defensive theory. *Id.* A finding of egregious harm must be based on actual harm rather than theoretical harm. *Id.* Egregious harm is a difficult standard to meet, and the analysis is fact-specific. *Id.* We assess harm considering the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Id.*

## IV. HARM ANALYSIS

Appellant generally complains that the definitions of the culpable mental states contained in the charge deprived him of a fair and impartial trial, and that such egregious harm requires a reversal of his conviction. We disagree.

The charge informed the jury of the relevant statute, which tracked Penal Code § 46.04(a):

5

A person who has been convicted of a felony commits an offense if they possess a firearm after the fifth anniversary of the person's release from supervision under community supervision following conviction of the felony at a location other than the premises at which the Defendant lived.

"Possession" was defined as "actual care, custody, control, or management." As stated above, the jury charge contained the full definitions of "intentionally" and "knowingly." The application paragraph instructed the jury on what the State was required to prove beyond a reasonable doubt:

To prove that the Defendant is guilty of unlawful possession of a firearm by a felon, the State must prove, beyond a reasonable doubt, three elements. The elements are—

1. The Defendant, Carlos Mendoza Mora, having been convicted of the felony offense of Possession of a Controlled Substance on the 29th day of May 2008 in cause CR34415 in the 142nd Judicial District Court of Midland County, Texas;

2. The Defendant possessed the firearm on or about the 15th day of May 2021, in Andrews County, Texas; and

3. The Defendant possessed the firearm after the fifth anniversary of the Defendant's release from supervision under community supervision for the felony offense, and at the time the Defendant possessed [the firearm,] he was not at his residence.

"In general, mere possession of firearms—particularly in one's home or vehicle—is lawful." *Dorsey v. State*, 623 S.W.3d 825, 835 (Tex. App.—Houston [1st Dist.] 2019), pet. denied, *Dorsey v. State*, 662 S.W.3d 451 (Tex. Crim. App. 2021) (per curiam) (citing Tex. Const. art. I, § 23; Tex. Penal Code Ann. §§ 46.02, 46.03(a)). "It is the very circumstance of being a felon that makes otherwise innocent conduct—firearm possession—criminal under section 46.04(a)." *Dorsey*, 623 S.W.3d at 835; *see also Bohannan v. State*, 546 S.W.3d 166, 176 (Tex. Crim. App. 2017) ("circumstances surrounding the conduct offenses in general . . . are criminal only because certain circumstances surround the conduct"; "[i]f such circumstances do not surround the conduct,

6

the conduct is not criminal"); *Ex parte Romero*, 943 S.W.2d 79, 79-80 (Tex. App.—San Antonio 1997, no pet.) ("unlawful carrying [of a weapon] requires culpable possession").

"The language of the felon-in-possession-of-firearm statute [Penal Code § 46.04(a)] shows that the gravamen of the offense is the circumstances surrounding the proscribed conduct." *Dorsey*, 623 S.W.3d at 835. In this case, the proscribed conduct is the possession of a firearm by a felon. *See* Tex. Penal Code Ann. § 46.04(a) ("A person who has been convicted of a felony commits an offense if he possesses a firearm . . . ."); *Bohannan*, 546 S.W.3d at 176 ("[f]or felon in possession of a firearm cases . . . the necessary circumstance is that the defendant is a convicted felon"). Section 46.04(a) "is a circumstances-surrounding-the-conduct offense because a violation arises only by the circumstance that the person has been adjudicated a felon." *Dorsey*, 623 S.W.3d at 835; *see also Nelson v. State*, No. 10-19-00082-CR, 2020 WL 1182235, at *5 (Tex. App.—Waco Mar. 11, 2020, no pet.) (mem. op., not designated for publication) ("a violation under section 46.04(a) arises only by the circumstance that Nelson had been adjudicated a felon"); *Kersey*, 2021 WL 5860920, at *9 (citing to *Dorsey* and noting the offense of unlawful possession of a firearm by a felon "has previously been classified as a circumstances-surrounding-conduct offense").

Here, the application paragraph for the count related to unlawful possession of a firearm by a felon required the jury to find Appellant "possessed the firearm" and had previously been convicted of a felony. *See Kersey*, 2021 WL 5860920, at *10 ("The application paragraphs thus told the jury it must find Appellant . . . engaged in the conduct of possession, not that she intentionally or knowingly accomplished a particular result.").[3] To the extent the charge's focus

---

[3] In *Kersey*, it was unclear whether the appellant challenged the inclusion of the result-oriented definitions of "intentionally" and "knowingly" as they pertained to Count II (unlawful possession of a firearm). The court of appeals assumed, without deciding, that the inclusion of the result-oriented definitions of "intentionally" and "knowingly" was erroneous as to Count II, but concluded any error in doing so did not result in egregious harm. *Kersey v. State*,

on a result of conduct was improper in a possession of a firearm by a felon case, the application paragraph here properly focused the jury on the nature of, or circumstances surrounding, Appellant's conduct—his possession of a firearm and his status as a felon. *Kersey*, 2021 WL 5860920, at *10 (same). Therefore, we conclude any error in the abstract definitions of the culpable mental states did not constitute egregious harm. *See id.*

Furthermore, Appellant does not dispute the three elements the State was required to prove. He admitted to the officers he was a felon and did not dispute at trial his May 29, 2008 conviction of the felony offense of possession of a controlled substance. He told the officers he had a weapon in his truck (and not at his residence), he admitted the firearm in his truck was his, and said he brought the gun with him because Amanda told him she was "having trouble" with her husband and he was "crazy." At trial, he did not dispute that this incident occurred after the fifth anniversary of his release from supervision under community supervision for the 2008 felony offense.

Finally, during closing arguments, defense counsel asked the jury to focus on "how [Appellant] acted towards the officers, how he stayed on the scene, how he voluntarily submitted to interviews with the officers. All of that doesn't really seem much like somebody who has a whole lot to hide, somebody who thinks they're doing something illegal. He was there to help, and that's what he was trying to do." The State did not dispute that Appellant was "a nice guy" or "wanting to help." Instead, the State asked the jury to focus on the fact that Appellant "had care, custody, and control of" the gun, "[h]e was the only person in the truck at the time," "[h]e knew it was there," the gun "was by his feet when he drove over there," and "[h]e acknowledged that it was his."

---

No. 08-20-00037-CR, 2021 WL 5860920, at *9 (Tex. App.—El Paso Dec. 10, 2021, pet. ref'd) (not designated for publication).

8

## V. CONCLUSION

We conclude that the error complained of in the jury charge did not constitute egregious harm, that is, it did not affect the very basis of Appellant's case, deprive him of a valuable right, or vitally affect a defensive theory. *Alcoser*, 663 S.W.3d at 165. Therefore, we overrule his sole issue on appeal and affirm the trial court's judgment.


LISA SOTO, Justice


September 27, 2024

Before Alley, C.J., Palafox and Soto, JJ.

(Do Not Publish)